**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SALLY DRAKE, *et al.*,<br><br>    Plaintiff,<br><br>v.<br><br>TUFTS ASSOCIATED HEALTH MAINTENANCE ORGANIZATION, INC. AND TUFTS HEALTH PUBLIC PLANS, INC.,<br><br>    Defendants. | Civil Action No. 1:19-cv-11876-FDS |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR STEP-ONE NOTICE PURSUANT TO THE FAIR LABOR STANDARDS ACT**
**(Leave to File Excess Pages Granted January 31, 2020)**

| | |
|---|---|
| TRAVIS M. HEDGPETH (TX Bar No. 24074386)<br>The Hedgpeth Law Firm, Pc<br>3050 Post Oak Blvd., Suite 510<br>Houston, Texas 77056<br>travis@hedgpethlaw.com<br>P: (281) 572-0727 | JACK SIEGEL (TX Bar No. 24070621)<br>Siegel Law Group PLLC<br>4925 Greenville, Suite 600<br>Dallas, Texas 75206<br>jack@siegellawgroup.biz<br>P: (214) 790-4454 |
| DOUGLAS M. WERMAN (IL BAR NO. 6204740)<br>MAUREEN A. SALAS (IL BAR NO. 6289000)<br>SARAH J. ARENDT (IL BAR NO. 6308501)<br>Werman Salas P.C.<br>77 West Washington St, Suite 1402<br>Chicago, Illinois 60602<br>dwerman@flsalaw.com<br>msalas@flsalaw.com<br>sarendt@flsalaw.com<br>P: (312) 419-1008 | Edward F. Haber (BBO# 215620)<br>Adam M. Stewart (BBO# 661090)<br>Patrick J. Vallely (BBO#663866)<br>SHAPIRO HABER & URMY LLP<br>Seaport East, Two Seaport Lane<br>Boston, MA 02210<br>Telephone: (617) 439-3939<br>Facsimile: (617) 439-0134<br>ehaber@shulaw.com<br>astewart@shulaw.com<br>pvallely@shulaw.com |

**I.     INTRODUCTION**

This is a straight-forward misclassification case that asks whether persons who performed utilization review job duties pursuant to Defendants' procedures and guidelines are entitled to overtime pay. Here, the Court need only answer one question: Whether Plaintiffs have made a "minimal" showing that they and other potential plaintiffs were subjected to the same policies or practices that are alleged to violate the FLSA. Because the evidence submitted by Plaintiffs—including three declarations, Defendants' job descriptions, and Defendants' written Utilization Management Policy ("UM Policy")—shows that Plaintiffs (1) performed the same or similar job duties; (2) worked one or more workweeks in excess of 40 hours; and (3) were subject to the same compensation policy that paid them a salary with no overtime pay, the Court should grant Plaintiffs' Motion for Step-One Notice.

    **A.     Defendants Are Not Entitled to Pre-Notice Discovery Nor Should They be Permitted to Move for Summary Judgment Before Notice is Issued and Putative Opt-in Plaintiffs Have a Chance to Join the Action.**

Defendants argue that granting step-one notice before the Parties engage in discovery and brief summary judgment would be "inefficient."[1] But this argument is inconsistent with the well-established FLSA notice procedures widely adopted in the First Circuit. The majority of district courts in this Circuit have adopted the two-step approach to granting conditional certification and issuing notice pursuant to 29 U.S.C. § 216(b).[2] The first step of the two-step process occurs prior to discovery, when the court determines whether plaintiffs and the putative opt-in plaintiffs are "similarly situated" based only the pleadings and affidavits submitted.[3] Requiring Plaintiffs to take discovery on the job duties of putative opt-in plaintiffs before issuing notice would unduly prejudice the putative opt-in plaintiffs because, unlike Rule 23 class members, the statute of limitations continues to run on the

---

[1] Resp., p. 16.
[2] *Trezvant v. Fid. Employer Servs. Corp.,* 434 F. Supp. 2d 40, 43 (D. Mass. 2006).
[3] *Id.*

1

claims of putative opt-ins until they affirmatively join the litigation by filing a consent form with the Court.[4] Courts in this Circuit and throughout the country routinely reject efforts by defendants to inject delay into the notice process through pre-notice discovery.[5]

Nor would any efficiencies be gained by briefing summary judgment on Plaintiffs' claim that putative opt-ins are similarly situated or on Defendants' affirmative defenses before issuing step-one notice. The discovery required to respond to a summary judgment motion would be extensive, encompassing both written and oral discovery including the depositions of managers, a Rule 30(b)(6) deposition, and ESI discovery. And if Defendants' motion for summary judgment was denied, discovery would need to be largely duplicated for the opt-in plaintiffs who subsequently join the litigation after notice is issued. Additionally, allowing Defendants to move for summary judgment at this stage would be inequitable because under the one-way intervention doctrine, Plaintiffs would be precluded from filing their own cross-motion for summary judgment due to the state law class action claims in the Complaint.[6]

---

[4] *Id.* at 42, n.1.

[5] *Prescott v. Prudential Ins. Co.,* 729 F. Supp. 2d 357, 366 (D. Me. 2010) ("The prejudice to [plaintiff] of skipping the notice stage could be significant, while prejudice to [defendant] is minimal since it is able to move for decertification at the close of discovery."); *Wise v. Patriot Resorts Corp.,* No. 04-30091-MAP, 2006 WL 6110885, at *2 (D. Mass. Feb. 15, 2006) ("Plaintiffs are manifestly entitled to take the first step of the two-step process toward obtaining approval to proceed with their collective action under the FLSA."); *Pettenato v. Beacon Health Options, Inc.,* No. 19-CV-1646 (JPO) (BCM), Dkt. No. 45, (S.D.N.Y. July 8, 2019) (denying defendants' motion to take discovery and brief summary judgment on the professional exemption affirmative defense before considering plaintiff's step-one motion for conditional certification); *Florence v. Deli Mgmt., Inc.,* No. 1:18-cv-4303-SCJ, 2018 WL 7474860, at *1 (N.D. Ga. Dec. 18, 2018) (denying defendant's request to take precertification discovery and delay briefing on conditional certification as antithetical to the FLSA's notice objectives); *Mantooth v. Optimal Energy Res., Inc.,* No. 1:18-cv-094, 2018 U.S. Dist. LEXIS 175394, at *3-4 (D.N.D. Oct. 11, 2018) ("Pre-conditional certification discovery is simply unnecessary. Courts are to rely on the pleadings and any affidavits submitted by the Plaintiff to determine whether to grant conditional certification."); *Joaquin v. Hinojosa,* 219 F. Supp. 3d 582, 587 (W.D. Tex. 2016) (denying defendants' motion to compel pre-notice depositions and rejecting defendants' argument that depositions "may short-circuit and prevent the need for any conditional certification.").

[6] *See Tardiff v. Knox County,* 567 F. Supp. 2d 201, 212, n. 14 (D. Me. 2008) ("A principal goal of the 1966 Amendments to Fed. R. Civ. P. 23 was to limit the availability for one-way intervention by 'assuring that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments' through the timing requirement of Rule 23(c)(1) for class certification and the notice and opt-out requirements of Rule 23(c)(2).").

Defendants cite the Second Circuit's decision in *Isett* in support of their argument that issuing notice now would create "procedural complexity and confusion" among opt-in plaintiffs if their claims were later dismissed.[7] But the appeal in *Isett* arose under a very different procedural posture. In *Isett,* the district court denied the plaintiff's motion for conditional certification without prejudice and instead granted Defendant's motion for summary judgment with respect to the plaintiff only, while granting the Parties' stipulation to dismiss the claims of opt-in plaintiffs who had joined the case prior to conditional certification without prejudice.[8] The Court here can avoid the "confusion" Defendants fear by simply following the standard two-step procedure for conditional certification adopted by courts in the First Circuit. Defendants also argue that Plaintiffs' motion should not be granted because there is a risk that the conditionally certified class could be decertified at step-two.[9] But under this logic, which subverts the entire two-step certification process, no collective could ever be certified because of the risk of decertification at step two. The Court should grant Plaintiffs' Motion for Step-One Notice and resolve any issues of fact at step two, after the Parties have engaged in discovery.

      **B.**    **Defendants' Declarations And Affirmative Defenses Do Not Preclude Conditional Certification Because the Court Does Not Resolve Factual Disputes or Make Credibility Determinations at This Stage**

Defendants spend a large portion of their Response summarizing declarations that they collected from seven current employees to support alleged "variations" in URE job duties.[10] Significantly however, at this stage "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."[11] As the District of Wisconsin

---

[7] *Isett v. Aetna Life Ins. Co.,* No. 18-3271-CV, 2020 WL 201682 (2d Cir. Jan. 14, 2020); Resp., p. 16.
[8] *Isett v. Aetna Life Ins. Co.,* No. 3:14-CV01698, Dkt. No. 112 (D. Conn. Sept. 29, 2016); *Id.,* Dkt. No. 206 (D. Conn. Nov. 8, 2018).
[9] Resp., pp. 16-17.
[10] Resp., p. 4-13.
[11] *Roy v. FedEx Ground Package Sys., Inc.,* 353 F. Supp. 3d 43, 67 (D. Mass. 2018) (quoting *Montoya v. CRST Expedited, Inc.*, 311 F.Supp.3d 411, 420 (D. Mass. 2018).

3

explained in granting notice to a nationwide group of call center and in-patient nurses, it is only at step two—after the close of discovery—that a court assesses the merits under a stricter standard:

> If the differences between the different nurse's positions prove so significant that their claims cannot be decided as a class, Humana may ask the Court to decertify the class or the class may be divided into subclasses. *Witteman v. Wisconsin Bell, Inc.*, 09–CV–440–VIS, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010). However, such a determination is better suited to the second stage.[12]

Defendants' declarations of current employees submitted in opposition to Plaintiffs' motion, commonly referred to as "happy camper" declarations, have been rejected by district courts throughout the country as both unreliable—given the inherent risk that the declarations were secured through coercion—and premature.[13] "To the extent that Defendants' affidavits controvert the Plaintiffs' affidavits, the Court may not act as a factfinder in resolving a motion for conditional certification."[14]

Likewise, courts in the First Circuit do not consider "the various defenses available to defendant which appear to be individual to each plaintiff" until the step two, decertification stage.[15] And Courts in this District and others also reject attempts by employers who, like Defendants here,

---

[12] *Schroeder v. Humana Inc.*, No. 12-C-0137, 2012 WL 5931886, at *8 (E.D. Wis. Nov. 27, 2012).
[13] *Spencer v. Macado's, Inc.,* No. 6:18-cv-00005, 2019 WL 4739691, at *4 (W.D. Va. Sept. 27, 2019) ("Plaintiffs correctly note that such 'happy camper' declarations are generally entitled to little or no weight at this [step one] stage, given the risk that the employer secured such declarations through explicit or implicit coercion."); *Abner v. Convergys Corp.,* No. 1:18-cv-442, 2019 WL 1573201, at *5 (S.D. Ohio, Apr. 11, 2019) (declining to consider affidavits submitted by defendant by current employees in opposition to motion for step one notice) citing *Fitch v. Carey Counseling Ctr., Inc.,* No. 1:17-cv-01066-JDB-egb, 2018 WL 4945243, at *3 (W.D. Tenn. Jan. 10, 2018) ("The 'happy camper' defense has been soundly rejected at this notice stage."); *Goodman v. Burlington Coat Factory,* No. 11-4395 (JHR), 2012 WL 5944000, at *6 (D.N.J. Nov. 20, 2012) (declining to consider 38 declarations from defendants' current employees submitted to show individual differences among job duties because addressing the merits at the notice stage is premature).
[14] *Levecque v. Argo Mktg Grp., Inc.,* 2015 WL 3672647, at *16 (D. Me. June 12, 2015) citing *Trezvant,* 434 F. Supp. 2d at 43 (D. Mass. 2006) (at step one stage, courts do not "make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.")(internal citations omitted).
[15] *Pineda v. Skinner Servs., Inc.,* No. CV 16-12217-FDS, 2019 WL 3754015, at *4 (D. Mass. Aug. 8, 2019) citing *Trezvant,* 434 F. Supp. 2d at 45 (D. Mass. 2006).

raise the specter of alleged "individualized" exemptions at the step one stage.[16] Defendants raise one of these alleged exemption defenses—the highly-compensated employee exemption—for the very first time in their Response brief.[17] Because Defendants did not plead this exemption as an affirmative defense in their Answer, they have waived it and should not be allowed to raise it as an alleged barrier to conditional certification.[18]

"Defendants will be free to challenge the accuracy of the picture presented by Plaintiffs, but not until it is time for the court to consider the final certification of the class."[19] For this reason, Defendants' arguments about the sufficiency of Plaintiffs' declarations are likewise premature. They are also unfounded. The fact that Plaintiffs' declarations "include similar statements regarding [Defendants'] alleged failure to compensate [salaried UREs] for overtime hours is not surprising in light of the fact that they are alleging the existence of a common illegal practice."[20] And, contrary to

---

[16] *O'Connor v. Oakhurst Dairy*, No. 2:14-CV-00192-NT, 2015 WL 2452678, at *3 (D. Me. May 22, 2015) (rejecting that "individualized factual investigation" that exemptions required made notice improper, noting employer would "have the opportunity to re-raise these defenses through a motion to decertify the collective action," and providing that "at this first stage these defenses do not defeat conditional certification) (citing *Garcia v. Freedom Mortg. Corp.,* No. 09–2668, 2009 WL 3754070, at *5 (D.N.J. Nov.2, 2009) ("[T]he outside sales and administrative exemptions lend themselves to efficient resolution during discovery and stage two certification."); *Roberts v. TJX Companies, Inc.,* No. 13-CV-13142-ADB, 2017 WL 1217114, at *4 (D. Mass. Mar. 31, 2017) ("For purposes of conditional certification, the Court need not make a determination as to whether management was or was not the primary duty of the putative plaintiffs.") (citing *Indergit v. Rite Aid Corp.*, Nos. 08-9361, 08-11364, 2010 WL 2465488, at *9 (S.D.N.Y. June 16, 2010) (deciding not to credit Defendant's argument that the fact-intensive nature of primary duty inquiry precludes FLSA collective action because it would mean that "no FLSA action that is premised upon an alleged misclassification under the executive exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit.").

[17] Resp., p. 2.

[18] *See Pineda,* 2019 WL 3754015, at *8 (D. Mass. Aug. 8, 2019) (defendants could not argue that Motor Carrier Act exemption defeated commonality when they failed to plead the exemption as an affirmative defense and had thus waived the argument); *Lemieux v. City of Holyoke,* 641 F. Supp. 2d 60, 64 (D. Mass. 2009) ("The First Circuit … decided over sixty years ago that an FLSA exemption … must be asserted affirmatively." quoting *Schmidtke v. Conesa,* 141 F.2d 643, 635 (1st Cir. 1944)).

[19] *Davine v. Golub Corp.,* No. 14-30136-MGM, 2015 WL 1387922, at *3 (D. Mass. Mar. 25, 2015) (rejecting defendants' argument that plaintiffs' declarations to support step one notice were uniform and conclusory).

[20] *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp . 2d 340, 352 (E.D.N.Y. 2012); *Bollinger v. Residential Capital, LLC,* 761 F. Supp. 2d 1114, 1120 (W.D. Wash. 2011); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060–61 (N.D. Cal. 2007) (granting notice to nationwide group of Home Mortgage Consultants based on plaintiffs' declarations that represented "a very small portion of the full range of HMCs and Wells

Defendants' claims, Plaintiffs' declarations explain how they acquired knowledge of the common duties and policies applicable to Defendants' other UREs during their employment—through direct communication, physical observation, and by and attending trainings with other UREs.[21]

### C. Plaintiffs Have Satisfied the Minimal Evidentiary Showing Required for Notice.

As Judge Hornby explained in *Prescott,* at the first step of conditional certification, the Court

> determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, "based only on the pleadings and any affidavits which have been submitted." At the first stage, the plaintiff "has the burden of showing a 'reasonable basis' for [her] claim that there are other similarly situated employees." In other words, the plaintiff must make "a modest factual showing" that she and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan. The standard at the initial stage has been called "not particularly stringent," "fairly lenient," "flexib[le]," "not heavy," and "less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." Under this "fairly lenient" standard, the initial stage analysis "typically results in 'conditional certification'" of a collective action.[22]

Notice is warranted here because Plaintiffs' allegations—corroborated by Plaintiffs' three declarations, Defendants' UM Policy, Defendants' job descriptions, accreditation guidelines, and Defendants' own declarations—show that the "proposed plaintiffs are similarly situated … with respect to their allegations that the law has been violated."[23] Courts in this district "regularly grant conditional

---

Fargo locations, and [were] nearly identical in terms of language and substance" despite defendant raising "substantial issues regarding the reliability of these declarations" because the declarations nevertheless satisfied the lenient first stage standard by alleging that all HMCS were paid pursuant to common plan and that there was a significant degree of commonality among the class members).

[21] *Costello v. Kohl's Illinois, Inc.,* No. 1:13-CV-1359-GHW, 2014 WL 4377931, at *5 (S.D.N.Y. Sept. 4, 2014) (granting notice based on sworn testimony that was based on observations and discussions with the stores they worked and communications with other assistant managers at meetings).

[22] *Prescott,* 729 F. Supp. 2d at 364 (D. Me. 2010) (internal citations omitted); see also *Roberts,* 2017 WL 1217114, at *3 (D. Mass. Mar. 31, 2017) ("Here, at the first stage, the Court need only make a "preliminary finding" as to whether the named plaintiffs are similarly situated as to other potential plaintiffs. The standard for the preliminary showing is lenient, and "[a]t this stage, courts do not need to make any findings of fact with respect to contradictory evidence presented by the parties or make any credibility determinations with respect to the evidence presented.'") (citations omitted).

[23] *Roberts,* 2017 WL 1217114, at *6 (D. Mass. Mar. 31, 2017) (""[T]he focus of this Court's inquiry at this point in considering conditional certification is "not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been

certification based on similar factual materials."[24]

### 1. Defendants' Salaried UREs are Similarly Situated

While Defendants do not dispute that all UREs under its various job titles perform utilization reviews by using guidelines to approve requests for coverage of medical and/or behavioral health services and treatment, it lards its response with irrelevant facts about the various products Defendants offer and the types of members that use those products.[25] But under the job duties analysis applied in this Circuit, courts "routinely grant certification where the proposed class members' job titles or duties are not exactly the same, as long as they are similar."[26] As a result, "some variation in the Plaintiff's specific job duties will not destroy a similarly situated designation at this stage of the litigation."[27]

The declarations submitted by Plaintiffs are sufficient to carry Plaintiffs' burden. The three sworn declarations explain that Plaintiffs and other UREs:

- Perform similar non-clinical utilization review work consisting of determining whether to approve health insurance benefit requests based on whether requisite criteria were

---

violated."); *Id.* ("Even more instructive, perhaps, is the fact that many courts in this Circuit have similarly applied a relatively lenient standard for conditional FLSA certification.") (citing *Cunha v. Avis Budget Car Rental, LLC,* No. 16-10545, 2016 WL 6304432, at *3 (D. Mass. Oct. 26, 2016) (finding that plaintiff "has shown that damage managers at Avis are all classified as salaried employees who are exempt from overtime under FLSA [and] [t]hat alone may be sufficient to issue notice").

[24] *Dyse v. HealthAll Consulting,* No. 1:19-CV-10704-PBS, 2020 WL 62121, at *3 (D. Mass. Jan. 7, 2020) (citing *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 163–64 (D. Mass. 2019), opinion clarified by 404 F.Supp.3d 529 (D. Mass. 2019) (allowing conditional certification on the bases of four declarations stating that workers did not receive overtime pay as the result of a standard company practice); *Rossello v. Avon Prod., Inc.*, No. CIV. 14-1815 JAG, 2015 WL 5693018, at *2 (D.P.R. Sept. 28, 2015) (granting notice based on three declarations and job descriptions sufficient to establish Plaintiff's "light burden" that all employees had "similar (not identical) job duties); *Kane v. Gage Merch. Servs., Inc.,* 138 F. Supp. 2d 212, 215 (D. Mass. 2001) ("The record thus suggests that the Defendants had a policy of treating at least some of a discrete class of employees (i.e. Crew Coordinators) as exempt from the FLSA overtime requirements. That showing is sufficient for this Court to determine that a 'similarly situated' group of potential plaintiffs exists given the adopted lenient standard for court-facilitated notice.").

[25] *See e.g.,* Resp., pp. 3, 20.

[26] *Lichy v. Centerline Commc'ns LLC*, No. 15-CV-13339-ADB, 2018 WL 1524534, at *3 (D. Mass. Mar. 28, 2018) (collecting cases).

[27] *Deakin v. Magellan Health,* 328 F.R.D. 427, 433 (D.N.M. 2018)(explaining that "some variation in the Plaintiff's specific job duties will not destroy a similarly situated designation at this stage of the litigation.") (citation omitted).

present in a health plan member's clinical information ("Utilization Review Work").[28]

- Do not provide medical care in a clinical setting or provide direct medical care to members, but instead apply Defendants' practices, procedures, guidelines, and criteria for the approval of treatment or services on a remote basis or in a call center environment.[29]

- Receive training on how to use Defendants' procedures, guidelines and criteria to perform their job duties, could not deviate from those guidelines in any meaningful way, and under no circumstances had the authority to deny a member's request for service or treatment.[30]

The declarations also demonstrate that UREs all performed the same non-clinical work regardless of arbitrary job title assigned or whether they were licensed as an LPN, RN or held another certification from a state licensing board.[31]

Defendants' own declarations corroborate Plaintiffs' claims that salaried UREs (1) perform the same core utilization review job functions;[32] (2) use standardized guidelines and tools to determination whether requested services and care are medically necessary;[33] (3) do not have the authority to deny claims based on medical necessity but must instead consult with a supervisor or medical director;[34] and (4) are paid a salary, classified as exempt, and denied overtime pay.[35] For example, Defendants' declarations show that UREs' common job duties includes participating in

---

[28] ECF 27-1, Ex. B, ¶ 2; ECF 27-1, Ex. C, ¶ 2; ECF 27-1, Ex. D, ¶ 2; *see also* ECF 27-1, Ex. G, p.1 ("Tufts Health Public Plans utilizes criteria to determine the appropriateness of services requested.
[29] ECF No. 27-1, Ex. B, ¶¶ 4, 6, 7; ECF No. 27-1, Ex. C, ¶¶ 4-6; ECF No. 27-1, Ex. D, ¶¶ 4-6; *see also* ECF No. 27-1, Ex. G ("Tufts Health Public Plans has established policies and procedures that govern the utilization review management (UM) program."
[30] ECF 27-1, Ex. B, ¶ 6; ECF 27-1, Ex. C, ¶ 5; ECF 27-1, Ex. D, ¶ 5; *see also* Exhibit G ("Only qualified, licensed physicians with the appropriate clinical expertise make decisions to deny coverage.").
[31] ECF No. 21-7, Ex. B, ¶¶ 3, 5; ECF No. 21-7, Ex. C, ¶ 3; ECF No., 21-7, Ex. D, ¶ 3 *see also* ECF No. 21-7, Ex. E, p. 6 ("P-HUM 10(a): An LPN/LVN meets the URAC definition of health professional and this licensure category may conduct initial clinical review.").
[32] Resp., ECF 37-1, Ex. 1, ¶ 3; ECF No. 37-2, Ex. 2, ¶¶ 5-6; ECF No. 37-3, Ex. 3, ¶¶ 4-5; ECF No. 37-4, Ex. 4, ¶¶ 6-7; ECF No. 37-5, Ex. 5, ¶¶ 6-7; ECF No. 37-6, Ex. 6, ¶¶ 4; ECF No. 37-7, Ex. 7, ¶¶ 6-7.
[33] Resp., ECF 37-1, Ex. 1, ¶¶ 5, 8; ECF No. 37-2, Ex. 2, ¶ 7; ECF No. 37-3, Ex. 3, ¶ 5; ECF No. 37-4, Ex. 4, ¶ 7; ECF No. 37-5, Ex. 5, ¶ 9; ECF No. 37-6, Ex. 6, ¶ 6.
[34] Resp., ECF 37-1, Ex. 1, ¶ 10; ECF No. 37-2, Ex. 2, ¶ 12; ECF No. 37-3, Ex. 3, ¶ 7; ECF No. 37-4, Ex. 4, ¶ 10; ECF No. 37-5, Ex. 5, ¶ 15; ECF No. 37-6, Ex. 6, ¶ 7.
[35] Resp., ECF 37-1, Ex. 1, ¶ 11; ECF No. 37-2, Ex. 2, ¶ 17; ECF No. 37-5, Ex. 5, ¶ 22; ECF No. 37-6, Ex. 6, ¶ 13; ECF No. 37-7, Ex. 7, ¶ 15.

weekly "rounds"—conference calls—where they discuss utilization reviews with physicians[36] and using Defendants' Interqual software program to perform utilization reviews.[37] Thus, the declarations show that UREs are performing similar job duties using the same tools, and support Plaintiffs' Motion for Step-One Notice.

Defendants' job descriptions also confirm that no one particular college degree in a specific field is required to perform the utilization review duties performed by UREs.[38] Defendants' own UM Policy identifies "policies and procedures" followed by Defendants' UREs in performing their utilization review work, including policies on "decision timeliness," "internal data-gathering consistency," and "decision making accountability compared with evidence-based UM criteria and guidelines."[39] It also establishes that Defendants' "Department managers monitor [UREs] compliance with these policies to ensure they are consistently met."[40] The UM Policy corroborates that "only qualified, licensed physicians… make decisions to deny coverage."[41] And Defendants' UM Policy is consistent with the accreditation requirements set by the Utilization Review Accreditation Commission, which state that the "standard prerequisite for utilization review work… is LPN level credentials" and that UREs "may approve requests… that meet clinical review criteria, but must refer requests that do not meet clinical review criteria to peer clinical review."[42]

The declarations, job descriptions, UM Policy, accreditation standards and even Defendants' own declarations show that all salaried UREs perform similar job duties following

---

[36] Resp., ECF 37-1, Ex. 1, ¶ 7; ECF No. 37-2, Ex. 2, ¶ 13; ECF No. 37-3, Ex. 3, ¶ 10; ECF No. 37-4, Ex. 4, ¶ 13.
[37] Resp., ECF 37-1, Ex. 1, ¶ 8; ECF No. 37-3, Ex. 3, ¶ 5; ECF No. 37-6, Ex. 6, ¶ 6.
[38] *See* ECF 27-1, Grp. Ex. A, pp. 5, 8, 11, 14, 23, 28, 30, 32, 35.
[39] ECF 27-1, Ex. G, p. 1.
[40] *Id.*
[41] *Id.*
[42] ECF 27-1, Ex. E, pp. 5-6.

the same policies and procedures under the same pay scheme that denied them overtime.

        2.        <u>Plaintiffs Identify a Common Policy or Plan</u>

Plaintiffs' evidence shows that salaried UREs worked over 40 hours per workweek[43], performed their non-clinical utilization review work in strict adherence with Defendants' guidelines and policies, and were subjected to a misclassification scheme alleged to violate the FLSA. While Defendants claim that classifying all positions as exempt is insufficient "as a matter of law to establish [Plaintiffs and putative opt-ins] are 'similarly situated,'"[44] courts in this district and around the country routinely hold that a uniform classification of employees as exempt is a common policy sufficient to warrant notice.[45] Moreover, Defendants' argument is a straw man because in addition to the uniform classification, Plaintiffs also show that UREs perform similar job duties under the same guidelines and procedures while working more than forty (40) hours per week without overtime. The declarations from opt-in Plaintiffs—as well Defendants' job descriptions for UREs in multiple states[46]—are sufficient to support conditional certification at this stage.

        3.        <u>Defendants Do Not Address On-Point Utilization Review & Managed Care Cases And Instead Cite to Inapposite Case Law</u>

Courts routinely permit issuance of opt-in notice to groups of utilization review and other

---

[43] ECF No. 27-1, Ex. B, ¶ 9; ECF No. 27-1, Ex. C, ¶ 8; ECF No. 27-1, Ex. D, ¶ 8.
[44] Response, p. 18.
[45] *Cunha,* 2016 WL 6304432, at *3 (D. Mass. Oct. 26, 2016) (finding that plaintiff "has shown that damage managers at Avis are all classified as salaried employees who are exempt from overtime under FLSA [and] [t]hat alone may be sufficient to issue notice*"); Kane*, 138 F. Supp. 2d at 215 (D. Mass. 2001) ("The record thus suggests that the Defendants had a policy of treating at least some of a discrete class of employees (i.e. Crew Coordinators) as exempt from the FLSA overtime requirements. That showing is sufficient for this Court to determine that a 'similarly situated' group of potential plaintiffs exists given the adopted lenient standard for court-facilitated notice."); *Randolph v. Centene Mgmt. Co.*, No. C14-5730 2015 WL 2062609, at *3 (W.D. Wash. May 4, 2015) (rejecting argument plaintiff did not identify a "single decision, policy, or plan" where plaintiff plainly alleged that employer had "a common policy of classifying case managers as exempt employees and denying them overtime compensation in violation of the FLSA."); *Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 585–86 (E.D.N.Y. 2012) ("A policy that requires employees to work overtime without compensation certainly qualifies as a common policy or plan under the FLSA.").
[46] *See e.g.* ECF 27-1, Exhibit A, pp. 21-23 (providing job descriptions for URE positions in Massachusetts and Rhode Island).

workers in the managed care industry and reject the arguments made by Defendants.[47] The alleged variation between URE positions claimed by Defendants does not impact this Court's analysis at step one.[48] Courts also reject Defendants' argument that potential differences in the amount of discretion exercised by employees precludes certification at the first stage[49]—and even later, at step two.[50] After

---

[47] *Deakin*, 328 F.R.D. at 433 (rejecting defendants' argument that the jobs in the class definition "differ across the nation in numerous ways, including by specialty, management group, level of responsibility over other employees, educational requirements, experience requirements, location, and unique customer contract" and granting conditional certification to 36 job titles in employer's "Care Management" job family based on declarations from employees in five states); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 163 (N.D.N.Y. 2008) (granting conditional certification of a nationwide group of approximately 500 utilization review nurses, medical management nurses, and case management nurses after rejecting defendant's argument that variances in job duties should prevent certification); *Schroeder*, 2012 WL 5931886, at *4; *Jackson v. Superior Healthplan, Inc.,* No. 3:15-CV-3125-L, 2016 WL 7971332, at *7 (N.D. Tex. Nov. 7, 2016); *Randolph*, 2015 WL 2062609, at *4.

[48] *See e.g. Schroeder,* 2012 WL 5931886, at *7 (rejecting argument that differences in job duties; different goals in applying guidelines before or after care is provided; locations worked; licensure requirements; management; production standards; workloads; and guidelines did not preclude conditional certification of group of employees classified as exempt under various job titles performed the same basic managed care functions and did not provide traditional medical care).

[49] *Lewis v. Epic Sys. Corp.,* No. 15-CV-82, 2016 WL 5947353, at *4 (W.D. Wis. Oct. 13, 2016) (rejecting argument that fact that plaintiffs had different primary duties because they exercised different levels of discretion and independent judgment, granting notice to companywide group of technical writers, and noting that the court had repeatedly "rejection the notion that individualized differences preclude conditional certification at the first stage of the conditional certification analysis.") (collecting cases); *Allen v. Hartford Fire Ins. Co.*, No. 6:16-cv-1603, 2017 WL 3701139, at *1 (M.D. Fla. Aug. 25, 2017) (rejecting arguments that differences in job titles and "distinct levels of discretion and independent judgment of "insurance analysts" employed under 41 job titles should preclude certification); *Clinton v. Gov't Employees Ins. Co.*, No. 2:16CV430, 2017 WL 3025558, at *3 (E.D. Va. July 14, 2017) (rejecting defendant's argument that Plaintiffs were not similarly situated "because each employee exercised varying levels of discretion and independent judgment and were subject to varying degrees of supervision," providing that "individual differences among Plaintiffs as to the exercise of discretion and the extent to which they were supervised are immaterial at this stage in the certification process."); *Diller v. Sunoco Logistics Partners Operations., G.P., L.L.C.*, No. 05-3693, 2006 WL 8450765, at *4 (S.D. Tex. May 5, 2006) ("While determining the application of the administrative exemption may in some cases require a 'case by case' review of the employee's degree of discretion and independent judgment, as argued by Sunoco, in this case the potential need for individual assessment does not weigh against notification. At this juncture, plaintiffs need only make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.") (internal punctuation and citations omitted); *Green v. Harbor Freight Tools USA, Inc.,* No. 09-CV-2380-, 2010 WL 11435190, at *5 (D. Kan. Aug. 17, 2010) (rejecting argument that the "amount of discretion exercised in performing managerial responsibilities" due to differences in "volume of inventory in each store, the number of staff available and the manager's ability to delegate" made notice inappropriate and holding that issue was "premature" and that the issue would be "fully addressed" at the second stage of certification).

[50] *Hardesty v. Kroger Co.*, No. 1:16-CV-298, 2018 WL 4680801, at *6 (S.D. Ohio Sept. 28, 2018) (denying decertification in case where recruiters "provided inconsistent testimony pertaining to a key issue in the Administrative Exemption analysis: whether (and how much) discretion they exercised in performing their duties," because "unlike Rule 23, plaintiffs are similarly situated for purposes of the FLSA when "their claims [are] unified by common theories of defendants' statutory violations, <u>even if the proofs of these theories are inevitably individualized and distinct</u>.") (emphasis in original)

discovery, if the alleged "differences between the different [UREs] prove so significant that their claims cannot be decided as a class, [Defendants]] may ask the Court to decertify the class or the class may be divided into subclasses."[51]

In their Response, Defendants cite to cases in which district courts have denied step-one notice. But those cases have no application here because they (1) relied on significantly less evidence that Plaintiffs' evidentiary showing;[52] (2) were decided outside of the managed care context;[53] or (3) involved off-the-clock claims.[54] In granting notice to approximately 500 utilization review, medical management, and case management employees, a New York district court explained, "Plaintiffs' burden is minimal because the determination that the parties are similarly situated is merely a

---

[51] *Schroeder,* 2012 WL 5931886, at *8.

[52] *Brown v. Barnes & Noble, Inc.*, 252 F. Supp. 3d 255, 264 (S.D.N.Y. 2017) (denying notice where plaintiffs failed to allege that defendant trained them in non-exempt work, job description failed to reference non-exempt work, and declarations submitted failed to address whether they performed managerial duties in case involving executive exemption); Barfield v. New York City Health & Hospitals Corp., No. 05 Civ. 6319, 2005 WL 3098730, at *1 (denying notice where plaintiff submitted one declaration providing that there was a "wide spread practice of referral nurses sign up through multiple agencies, and no evidence whatsoever that this is pursuant to a policy of either [of the Defendants]."); *Guess v. U.S. Bancorp*, No. 06-07535-JF, 2008 WL 544475, at *3-4 (N.D. Cal. Feb. 26, 2008) (denying conditional certification where plaintiffs evidence only consisted of Plaintiff's own declarations, based on his own persona understanding and belief that, "the duties, responsibilities, and compensation agreements of all Financial Representatives employed by [Defendant] were substantially similar" to his own; and Plaintiff's counsel's declaration based on his "personal knowledge of the case, information shared with him by colleagues and information garnered through job descriptions posted on Defendant's website."); *Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (denying notice where the plaintiff had access to the defendants' pay records, but did "not make any showing about a widespread failure to pay minimum wage based on [those] pay records, "and  instead relied solely on "allegations made on knowledge and belief").

[53] *Burns v. City of Holyoke*, 881 F. Supp. 2d 232, 234 (D. Mass. 2012) (affidavit of two police officers insufficient to grant notice to class consisting of "clerical workers, inspectors and code enforcers, police dispatchers, medical technicians, and maintenance employees" where plaintiff provided no information "concerning the respective duties or responsibilities of class members or whether they work under similar supervision or management,").

[54] *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (denying conditional certification in case where plaintiff sought notice to approximately 8,000 plaintiffs in stores across the country allegedly subjected to off-the-clock work because plaintiffs had different supervisors giving them different input as to off-the-clock work); *Diaz v. Elecs. Boutique of Am., Inc.,* 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS 30382, at *14-*17 (W.D.N.Y. Oct. 13, 2005)
(allegations of one assistant manager's overtime practices insufficient to suggest that all were subject to same unlawful off-the-clock policy where plaintiffs had only alleged that "overtime must be approved and thus, [Defendant] had a policy of not paying for overtime work.");

preliminary one that may be modified or reversed at the second stage."[55] Therefore, the Court should grant Plaintiffs' Motion for Step-One Notice and conditionally certify the proposed collective.

### D. The Court Should Adopt Plaintiffs' Proposed Notice Program.

Although an FLSA notice is authorized by the Court, it is a communication from Plaintiffs and Plaintiffs' Counsel to putative Collective Action Members.[56] Therefore, "absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice."[57] Defendants seek to add additional language to the Notice that Defendants dispute the claims in the lawsuit.[58] But such language is duplicative and unnecessary because Plaintiffs' Notice already states that "Tufts denies the allegations in the lawsuit."[59] Defendants' proposed paragraph will just make the Notice longer without adding new and necessary information.

The Court should also reject Defendants' attempts to insert language in the Notice that opt-in Plaintiffs will have to travel to Boston for depositions and that they will have to produce their social media accounts, "potentially at [their] own expense," since such discovery issues will be negotiated by counsel or decided by the Court once discovery commences and Defendants' proposed outcomes, while possible, are "far from certain, and therefore should not, on balance be included in the Notice."[60] Likewise, the location of the depositions will depend on the location of the opt-in plaintiffs and their ability to travel. It is possible that the Parties will negotiate to take the depositions of opt-in plaintiffs and relevant witnesses, including Defendants' supervisory employees or Rule 30(b)(6) witnesses, in

---

[55] *Ruggles,* 591 F. Supp. 2d at 163.
[56] *King v. ITT Cont'l Baking Co.*, No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 13, 1986); *Gipson v. S.W. Bell Tel. Co.*, No. 08-CV-2017 EFM/DJW, 2009 WL 1044941, at *4 (D. Kan. Apr. 20, 2009) ("[T]he Court should refrain from altering a plaintiff's proposed notice unless doing so is necessary.").
[57] *King*, 1986 WL 2628, at *3 (emphasis added).
[58] Resp., p. 27.
[59] ECF No. 27-1, Ex. F.
[60] *Dilonez v. Fox Linen Serv. Inc.,* 35 F. Supp. 3d 247, 256 (E.D.N.Y. July 25, 2014) (rejecting defendants' request to include potential discovery inquiries about immigration status in the Notice and recognizing the *in terrorem* effect such language, as well as language about potential costs and counterclaims, imposes).

locations that are more convenient for the Parties and the deponents. Therefore, the Court should limit any mention of discovery obligations in the Notice to include only "neutral, non-technical language" that opt-in plaintiffs may have to provide documents or answer written questions about their employment and reject Defendants' proposed language identifying specific documents that must be produced or specific deposition locations.

The Court should also permit notice by email and text message because "in today's mobile society those methods of communication **may offer a more reliable means of reaching an individual** even if that individual is away from home or has moved."[61] "Justice is most readily served by notice reaching the largest number of potential plaintiffs."[62] The Court should order the production of mailing addresses, phone numbers and personal email addresses for current and former employees because multiple methods of communication increase the chances of putative Opt-ins receiving the Notice, and the need to contact putative Collective Action Members outweighs the privacy rights that Defendants allegedly seek to protect.[63] Defendants should have to produce employees' personal email addresses, to the extent they are in Defendants' possession, because sending current employees Notice via their Tufts email address may cause confusion about the source of the Notice. Likewise, current employees may fear retaliation if they join or communicate about the lawsuit via their work email account. And if Defendants produce work email addresses, former employees who no longer have access to their Tufts' email accounts would not receive the email notice, despite their eligibility to

---

[61] *Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017); *Regan v. City of Hanahan*, 2017 WL 1386334, 2:16-cv-1077, at *3 (D.S.C. Apr. 17, 2017) ("Mail, email and text message notice is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move.").

[62] *Simmons v. Enter. Holdings, Inc.*, No. 4:10-cv-625, 2011 WL 1304732, at *2 (E.D. Mo. Apr. 6, 2011).

[63] *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.,* No. 15 C 2361, 2016 WL 3693426, at *5 (N.D. Ill. July 12, 2016) (requiring production of names, addresses, email addresses and phone numbers) (citing *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008) ("Plaintiffs' request for the contact information of similarly situated employees also outweighs the privacy rights of such potential plaintiffs. Due process requires an opportunity to discover this information at the present stage of litigation, and such due process rights are more compelling than the privacy rights of potential plaintiffs' addresses and phone numbers.")

participate in the lawsuit.[64]

Finally, given the "salutary purpose of notice in collective actions,"[65] the Court should grant Plaintiffs' request to issue a reminder notice through mail, email, and text message.[66]

**CONCLUSION**

For these reasons, the Court should follow the commonly accepted two-step FLSA notice procedure, grant Plaintiffs' Motion for Step-One Notice and authorize issuance of Plaintiffs' proposed form of Notice.

Dated: February 14, 2020

Respectfully submitted,
/s/Sarah J. Arendt
One of Plaintiffs' Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2020, a copy of this document was filed on all counsel of records through the Court's ECF system and served in accordance with the Federal Rules of Civil Procedure.

/s/Sarah J. Arendt
Sarah J. Arendt

---

[64] *Burns v. Chesapeake Energy, Inc.*, 2017 WL 1842937, at *9 (W.D. Tex. Mar. 14, 2017) ("Nor is there a valid reason why the parties should not agree to e-mail notice in the year 2017."); *Page v. Crescent Directional Drilling, L.P.*, 2015 WL 12660425, at *3 (W.D. Tex. Dec. 10, 2015) ("'[E]mail is not the waive of the future; [it] is the wave of the last decade and a half'")(internal citations omitted).
[65] *Meyer v. Panera Bread Co.,* 344 F. Supp. 3d 193, 214 (D.D.C. 2018) (internal citations omitted).
[66] *Camp v. Bimbo Bakeries USA, Inc.,* No. 18-cv-378-SM, 2019 WL 440567, at *5 (D.N.H. Feb. 4, 2019) (authorizing reminder notice to be sent by regular mail, email, and text message to non-responsive putative opt-ins 45 days after initial mailing); *Diaz v. Ne3w York Paving Inc.,* 340 F. Supp. 3d 372, 387 (S.D.N.Y. 2018) (granting reminder notice to be issued 21 days before opt-in deadline); *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-CV-11390-R, 2015 WL 8664204, at *4 (D. Mass. Dec. 11, 2015) (authorizing reminder notice 30 days before the end of the claims period to any class member who had not returned a Claim Form on that date.); *Sanchez v. Sephora USA Inc.,* No. 11-03396 SBA, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (["C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in.").

15